### GASQUET & CO. *vs.* JOHNSTON—BREWSTERS' INTERVENING.

**APPEAL FROM THE COURT OF THE FIRST DISTRICT.**

Where A obtains a letter of credit, but before it is presented, the persons who gave it, losing confidence in A, direct him not to use it, but he afterwards presents and uses it, contrary to directions, by purchasing goods on the faith of it from B., such use is a fraud practiced on B, which authorizes him to claim the goods, in preference to an attaching creditor of A.

A fraudulent purchaser, who obtains property by a fraudulent representation, acquires only the naked possession, which gives no right to any of his creditors to attach it in his hands

The plaintiffs sued out a writ of attachment against the property of the defendant, a nonresident, and obtained judgment. The interveners opposed the sale of a quantity of hats, which had been attached, and which were sold by them to the defendant. In their petition they charge, that the defendant represented himself as authorized to draw on the house of Fisher, Burke & Watson, which representation they alleged was false and fraudulent. Their petition concluded with a prayer for a recision of the sale to Johnson, on the ground of fraud, and for restitution of the property.

It appeared from the evidence that the defendant had obtained from Fisher, Burke & Watson, a letter of credit, which he was afterwards verbally requested by them to return. To this request he made no objection, but could not,

at the moment, lay his hands on the letter; he assured them, however, that the letter should not be used. Nevertheless, it was afterwards exhibited by him in New-York, and on the faith of it he purchased the goods from the interveners.

There was judgment for the plaintiffs in the court below, and the interveners appealed.

*Strawbridge* for appellant.

*M'Caleb* and *Slidell* for appellee.

*Martin, J.* delivered the opinion of the court.

Brewster et al. intervened, in this case, to claim a quantity of hats, part of the property attached, sold by them to the defendant, on the ground of fraud used by the latter in obtaining them. Their claim was disallowed, and they appealed.

The facts of the case are these:—Johnson, who had obtained from Fisher, Burke & Watson, of this city, a letter of credit for the appellant at New-York, lost by some means the confidence of these friends of his, and they requested him not to make use of the letter, but return it. To this he assented; but found his way to New-York, where, on producing the letter, he obtained the hats, and gave the appellants a bill on Fisher, Burke & Watson, who soon after failed.

The appellant's counsel has urged that these facts establish a fraud in Johnson, which, were the hats still in his possession, would authorize them to claim them back; and that the attachment by his creditors does not affect his claim.

The appellee's counsel has urged that the sale was fair and bona fide, not only so far as the interests of third persons were concerned, but in regard also to those and the expectations of the appellants, who gave credit to the defendant on the faith of a letter of credit, which bound the writers, who could not exonerate themselves from their responsibility by alleging a revocation of the credit, whilst they suffered the defendant to retain the letter;—that if the appellee's sold on

the guarantee of Fisher, Burke & Watson, no fraud was practised on them; for they fully acquired it. If, on the contrary, they trusted the defendants, and were satisfied to look to him, the length of credit they gave is evidence of their want of intention to retain any lien on the goods, as the credit was given to enable the vendee to raise money to pay for the goods by the sale of them: and this court has decided that when the party can sell, the creditors may attach.—Olivin vs. Towles, 2 *Martin*, 93; Dunford vs. Brooke's syndics, 3 *Martin*, 327; Norris vs. Mumford, 4 *id.* 20; Ramsay vs. Stephenson, 5 *id.* 23.

The counsel for the appellants has relied on the cases of Buffington et al. vs. Gaush et al. 15 *Mass. Rep.* Cony vs. Irwin et al. 2 *Mason*, 239. Dewolf vs. Butler, 4 *Mason*, 289; and Allison vs. Mathews, 3 *Johnson*, 235,—in support of his allegation of fraud.

He has urged that in the cases relied on from *Martin*, this court said, that where the debtor can sell, his creditors can attach: but the decision of that case must be confined to those similarly circumstanced; *i. e.* when the opposing creditor has an imperfect title, (the possession yet remaining in the vender,) the attaching creditor will hold the property; the sale, as to third persons, being completed by the delivery alone: and he has referred us to the case of Torregana Segura's syndics, 2 *Martin*, *N.S.* 158; in which we held that after the insolvent had transferred to his creditors a slave, the price of which he had not paid, his endorser becoming subrogated, by paying it, to the rights of the vender, could demand a recision of the sale, and recover the slave. He has cited, finally, the case of Armour vs. Cockburn, 4 *Martin*, *N. S.* 666; in which we held that if the consignee promises to sell the goods and pay the proceeds to a creditor of the consignor, (the promise being accepted by the creditor) the goods cannot be attached to his prejudice by any other creditor.—*Civ. Code*, 2010 and 3109. *Code of Practice*, 23.

The exhibition of the letter of credit, under the circum-

Eastern District,
June 1831.

GASQUET ET AL
vs.
JOHNSON

stances of this case, was clearly a fraud, practised by the defendant on the appellants; for it induced them to believe that they had, besides the responsibility of the writers, that of a person whom the latter considered as trust-worthy, and he falsely represented himself to them as such, by the production of a false token. In a moral point of view, the use of the letter after it was revoked, was equally as criminal as the forgery of a similar one.

A letter of credit virtually includes a recommendation;— for the best manner that a solvent individual has to recommend his friend, is by offering to guaranty his performance of his contracts. Such a letter often enables the bearer to obtain credit from the person to whom it is addressed, beyond the limits which the writer may have put to his own liability; and it often secures the confidence of other persons, who may see or hear of it.

losing confidence in A, direct him not to use it, but he afterwards presents and uses it, contrary to directions, by purchasing goods on the faith of it from B, which authorizes him to claim the goods, in preference to an attaching creditor of A

In the case cited from 2 Mason, Judge Story raised the question, whether when possession is obtained by fraud, on a sale of goods, the contract be void *ab origine*. He solved it in the affirmative in the case in 4 Mason. G. D'Wolf had bought from Babett several boxes of sugar, which he was to pay for by certain acceptances. Before the delivery of these acceptances, and whilst the sugar was still in the vender's store, the vendee made a contract for the shipment of the sugar, and obtained the signature of the master of the ship to bills of lading for the sugar; and J. D'Wolf, to whom he transferred the bills of lading, and whom he furnished with the invoices, on faith thereof made him a considerable advance. The persons whose acceptance the vender had stipulated for, having failed; and the vendee concealing the failure, obtained his consent to the sugar being sent on board. On discovering the vendee's inability to comply with the terms of the sale, the vender successfully resisted the claim of the assignee of the bill of lading; Judge Story being of opinion that the delivery, on the part of the vender, was a

conditional one, depending on the compliance with the terms of the sale, and obtained by the concealment of the failure, and, consequently, could not divest the vender of his property.

The decision of this court, that where the debtor may sell, the creditor may attach, must be understood as confined to cases in which the debtor had once the property of the goods, and still retains it as to his creditors, although he may have lost it as to his vendee, as in the case of a sale not followed by delivery. There may be cases, as those in the 3473d article of our Civil Code, in which the sale of a third person's thing, may transfer a property which the vender has not, either in an absolute or qualified manner. In such a case we think, with the claimant's counsel, that although the party could sell, his creditors could not attach.

A fraudulent purchaser, who obtains property by a fraudulent representation, acquires only the naked possession, which gives no right to any of his creditors to attach it in his hands,

In the present case, although the defendants had the possession of the claimant's goods, it is clear the property of the latter was not divested by his parting with them on a fraudulent representation. They might successfully have claimed them from the defendant, who had only a naked possession, which gave no right to his creditors to at tac .

It is therefore ordered, adjudged, and decreed, that the judgment of the District Court be annulled, avoided, and reversed; and that there be judgment for the intervening party, or claimants, with costs in both courts.