Simon, J.
This suit was commenced by attachment. The property upon which it was levied consists in a certain amount proceeding from the sales of 163 bales of cotton, which, having been sold by Franklin & Henderson, the garnishees, left in their hands, after payment of a draft for $50C0, drawn upon them by the defendant, and paid sometime previous to the sales, a balance of $938 98, the right to which is claimed by Patton, an intervening party, in whose favor judgment was rendered in the inferior court, from which the plaintiffs have appealed.
The record exhibits the following facts and circumstances : It appears that sometime in the beginning of 1844, the intervenor advanced to the defendant, Morton, at Columbus, Georgia, a sum of money, which was invested by' the latter in the purchase of cotton. Morton purchased 163 bales, which were shipped to Preston & M’Clay, of Apalachicola, whence they were reshipped and consigned to the garnishees at New Orleans. On the 7th of March, 1844, the defendant executed to Patton, the intervenor, at Columbus, a receipt for the sum of $7290 80, being “in full for invoice of 163 bales of cotton shipped to Messrs. P. & M. Apalachicola, por steamer Boston, on the 10th of February, and by them reshipped to Messrs. F. & H. New Orleans.” And on the same day, he, Morton, drew a bill for $5000, on the garnishees, payable to the order of the intervenor, which was duly paid. Oh *410 the same day, a letter and invoice were written by Morton to Franklin & Henderson, giving them notice of the drawing of the bill, which were received with the cotton, the invoice of which is headed in the following words: “Invoice 163 bales shipped by W. S. Morton, per steamer Boston, to Messrs. Preston & M’Clay, Apalachicola, and by them reshipped per schooner Swallow, to Messrs. Franklin & Henderson, New Orleans, to be sold for account and risk of Richard Patton, Esq., and account sales rendered to W. S. Morton.” Said cotton was sold about the 1st of April ensuing.
On the 11th of March,'Morton drew another bill of exchange, or order, upon the garnishees, in favor of R. Patton, to pay the balance of the proceeds of the cotton, to the order of the latter. This bill was endorsed by Patton to E. G. Casey, his agent, who forwarded it to Corning & Co. of New Orleans, his agents, after having, as such agent, endorsed it over to the order of the latter; and the evidence establishes, that Corning having, prior to the issuing of the attachment, met Franklin, (of the house of Franklin & Henderson,) in the street, he informed him, that he had received an order for the balance of the proceeds of the cotton. Franklin answered, that the cotton was not sold, and no further particulars were given by Corning about the order. It further appears, however, that Corning <fc Co. who were the bearers of Morton’s order, as the agents of Casey or Patton, were also the agents of the plaintiffs, and that by direction of the Bank, they caused the present suit by attachment to be instituted. This attachment was levied on the 2d of April, 1844, subsequently to the conversation between Corning and Franklin in relation to Morton’s order in favor of Patton ; and we find, in a letter from Corning <fc Co. to the cashier of the Bank, dated the 4th of April, 1844, that the latter had been previously apprised of the issuing of the attachment. The letter recites : “ Morton had given an order for the balance in favor of Casey, but it was not accepted, and, therefore, the attachment, we think, will hold good.”
The record further shows, that a letter was written by Casey to Corning <fc Co. on the 11th of March, 1844, in which the order for the balance was enclosed, with a request that the proceeds .of both bills, (including that for $5000,) should be remitted *411 as soon as possible ; and the parol evidence proves, that after the order was given, Martin had no further interest in the cotton; that he exercised no further control or ownership over the same; and that he left for Europe on the 12th of March. The facts of the invoice bill of the cotton having reached the consignees ; of the bill for $>5000 having been presented in time by L. Corning; of Casey’s acting as the agent of the intervenor, and of Corning & Co. being the agents of the plaintiffs in this suit, are also satisfactorily established; and it is perhaps proper, that we should particularly notice the manner in which the order, forwarded by Casey to Corning & Co., and which was in the possession of the latter at the time this suit was instituted, was drawn by the defendant. It is in these words: “ Messrs. Franklin &. Henderson, New Orleans : Please pay to Richard Patton, Esq., or order, the avails of shipment of 163 bales of cotton, forwarded' to your address by Messrs. Preston & M’Clay, of Apalachicola, against which I valued on you, in his favor, at 30 days, on the 7th inst., for $5000. The cottons are his, and you will please hold then subject to his order only. Wm. S. Morton.”
We are satisfied, that the judgment appealed from is correct. Without its being necessary to inquire into the question of ownership of the cotton, the title to which appears to have been transferred by Morton to the intervenor, not only by the order which is the main basis of the intervention, but also by the receipt and invoice produced in evidence, and whieh might perhaps, being in good faith, be sufficient to divest Morton of his title to the cotton, and to entitle Patton to claim the proceeds thereof as his ; it seems to us, that it suffices that said proceeds were regularly transferred by the former owner of the cotton to the intervenor,, for a valuable consideration, before the date of the issuing of the attachment, to give the latter the right of recovering them as against an attaching creditor, provided it is shown, that due notice of the transfer was given to the debtor of said proceeds previous to the levying of the attachment. It is true, the only direct notice of the order proven to have been given to Franklin &, Henderson, results from a conversation which took place between Franklin and Corning, sometime previous to the sale of the cotton ; but the consignees must have also known from the invoice,,
*412 which was in their possession at that time, that the cottons were to be sold for the account of Patton, and that, therefore, the latter was entitled to receive the proceeds thereof; they had already-paid him five thousand dollars on the cottons yet unsold, and when Corning apprised Franklin that he, Gorning, to whom the $5000 had been paid, as Casey’s agent, was the bearer of an order for the balance, the only reason then given for not accepting the order was, that the cotton was not sold. Thus, Franklin knew that there was in the hands of Corning & Co., an outstanding order for, or a transfer of, the balance of the proceeds; he was aware, that had the cotton been sold, such balance should have been paid over to Corning ; and as it is obvious, that his refusal to accept the order, because the cotton was not sold, could not destroy the right of the transferree, it is clear, that the knowledge which Franklin had of the existence of the transfer, was sufficient to entitle the intervenor to claim said proceeds, after the sale, and that no attachment at the suit of any of the transferror’s creditors, could have been levied upon them. We have often held, that it matters not in what way a debtor is informed of the transfer of his creditor’s claim, provided it is shown, that he knew that his said creditor was divested of all his rights to the debt assigned, and that such knowledge of the fact was derived from the transferree or his agent. 5 Mart. N. S. 180. 6 Ib. 286. Gillett v. Landis et al. 17 La. 470. Flint et al. v. Franklin et al. 9 Rob. 209. Here, Morton was clearly divested of his rights to the proceeds. Franklin & Henderson, in whose hands those proceeds were, knew it; nay, the plaintiff’s agents, who caused the attachment to issue, knew it also. They had the order in their possession, and were charged with its collection ; they were fully aware of the extent of the intervenor’s rights ; they knew that the proceeds were his property, and not Morton’s ; they could not, with any degree of good faith or fidelity to their trust, do any act which would have the effect of depriving their principal of the rights by him acquired through them, so as to give an undue advantage to themselves or to others; and, under all the circumstances of the case, as disclosed by the evidence, we do not hesitate to conclude, that the attachment was improperly laid upon the amount in controversy. The doctrine so often recog *413 nized by this court, that when the owner has lost all power over his property, aud when the title to it has become legally vested in another, creditors cannot attach, is properly applicable to the rights of the parties to this cause. 4 Mart. N. S. 667. 2 La. 514. 15 La. 465. 18 Ib. 321, 447. 4 Rob. 517.
This view of the question of notice, precludes the necessity of examining the two bills of exceptions found in the record, as neither of them has any bearing upon the proof adduced to establish it, with regard to the garnishees or debtors of the funds in dispute.

Judgment affirmed.